EXHIBIT "A"

EXHIBIT "A"

HAROLD W. CONROY TRUST "C"

THIS INDENTURE executed this ___25th___ day of February, 1974, by and between HAROLD W. CONROY, husband of Edna Y. Conroy, of Honolulu, City and County of Honolulu, State of Hawaii, hereinafter called the "Settlor", party of the first part, and HAROLD W. CONROY and WINIFRED ANN STARK, hereinafter called the "Trustees", parties of the second part,

W I T N E S S E T H :

That the Settlor, for and in consideration of the acceptance by the Trustees of the trust hereby created, does by these presents convey, sell, assign, transfer, set over and deliver unto said Trustees, their successors and assigns, absolutely and forever:

>     All of the property which are mentioned,
>     described or referred to in the exhibit which
>     is hereunto annexed, expressly made a part
>     hereof for every purpose and marked Exhibit "A".

TO HAVE AND TO HOLD the same, together with all rights of every kind belonging or appertaining or held and enjoyed therewith unto said Trustees, their successors and assigns, in trust, for the uses and purposes and with the powers hereinafter set forth:

1. The Trustees shall pay in each year commencing from the date hereof, all of the net income from the trust estate, in semi-annual, quarterly or monthly payments as they shall in their discretion determine, to or for the benefit of WINIFRED ANN STARK during her lifetime.

2. Upon the death of WINIFRED ANN STARK, the Trustees shall make a division of the principal of the trust into as many equal parts as shall provide one (1)

EXHIBIT "A"

share for each child of WINIFRED ANN STARK then living and one (1) share for the issue collectively per stirpes of each child of WINIFRED ANN STARK then deceased but who has left issue then living, each equal part to comprise a separate share for each surviving child of WINIFRED ANN STARK or the issue per stirpes of a deceased child of WINIFRED ANN STARK. (For example, if there shall be two children of WINIFRED ANN STARK surviving and one child then deceased who has left one or more children surviving, the principal shall be divided into three parts, one part for each surviving child and a third part for the one or more children of WINIFRED ANN STARK's child then deceased.) The assets to be included in each part shall be selected by the Trustees in their sole discretion, at the values thereof current on the date of such division. In respect to real property included as assets of the trust estate, the shares shall represent percentage interests in a common asset, and in respect to personal property such property may be held as a common asset without a physical division being made thereof.

3. In respect to each of said trusts designated for a surviving child or issue of WINIFRED ANN STARK, the Trustees shall pay from the date of death of WINIFRED ANN STARK, all or such portion of the net income from such trust to or for the benefit of each such child or such issue for whom such trust is designated, in such amounts and at such times as the Trustees in their discretion shall deem necessary or advisable, for the support, maintenance, education, hospitalization, medical care,

incidental expenses and comfort of such child or issue, in accordance with such child's or issue's needs as determined by the Trustees in their discretion, without in respect to such issue keeping the amounts distributed equal or proportionate. From and after such child attaining the age of twenty (20) years, the Trustees shall pay all of the net income from the respective trust to such child, and from and after the youngest of the collective issue for whom a respective share is designated attaining the age of twenty (20) years, the Trustees shall pay all of the net income from the trust to such issue in equal shares. Any income not distributed to age twenty (20) shall be accumulated and paid to the respective child or issue upon such child or issue attaining the age of twenty (20). In the event such child or issue who is the income beneficiary shall die and shall leave a descendant or descendants, said descendant or descendants shall represent such child or issue so deceased and take, per stirpes, under the foregoing provisions, the income such deceased child or issue would have been entitled to receive if living, but if at any time, while said trust is in existence such child or issue shall have died and shall leave no descendant living at such time, the Trustees shall pay the income from such trust designated for such issue to each of the other issue participating in the respective share, and if there are no other issue surviving, or in the case of a child leaving no issue, then the principal of such trust shall be transferred in equal shares to each of the other trust estates then existing per stirpes, to be held and administered as a part thereof. If

-3-

there are no children or issue of said trusts surviving at any time, then the income shall be paid to the then wife or widow of the Settlor. If there are no children or issue of WINIFRED ANN STARK living after her death and no wife or widow of the Settlor living, the income from the trust estate shall be paid one-half to CHARLES D. STARK if he is married to and living with WINIFRED ANN STARK at the time of her death, and the remaining one-half, or all thereof if CHARLES D. STARK does not meet the requirements above or if he does meet the requirements then upon his death, in equal shares, to MARY ANN ROOT, BARBARA PFEIFER, LAWRENCE McGOWAN, BERNARD NEIMAN and JOSEPHINE BRENNER, or to their issue, per stirpes.

The corporate Trustee shall have the power to pay out of any personal property included as principal of the trust estate from time to time such portions thereof as in its discretion it shall deem necessary for any hospital, medical expense or living costs for WINIFRED ANN STARK or any of her issue, if there are not sufficient sources of funds owned by any such person to provide therefor.

4. This trust shall terminate on the death of WINIFRED ANN STARK, the death of the then wife or widow of the Settlor, the death of CHARLES D. STARK or twenty-one (21) years after the death of the last to survive of the children of WINIFRED ANN STARK who shall be living on the date hereof, whichever shall last occur. Upon such termination the Trustees shall transfer, convey and deliver, absolutely and free from any trust the principal of the trust estate, together with any unpaid income, to the issue

-4-

of WINIFRED ANN STARK, such issue taking per stirpes by right of representation in each generation; and if no such issue are surviving then in equal shares to MARY ANN ROOT, BARBARA PFEIFER, LAWRENCE McGOWAN and JOSEPHINE BRENNER, or to the issue of any of them who are not surviving, such issue taking per stirpes.

5. The Trustees shall have full power and authority to hold, manage and control the trust estate and to sell, encumber or otherwise dispose of and deal with any of the trust property; to lease for any purpose and any term within or extending beyond the duration of the trust; to improve trust property without limitation, and to borrow upon the security of any trust property for any trust purpose; to invest and reinvest principal, and income, if accumulated, in such bonds, common or preferred stocks or other securities or property, real or personal, as they deem advisable, including participations in common trust funds, without being limited by any statute or rule of law affecting the investment of trust funds; from time to time to determine what is principal and what is income of the trust estate in accordance with the provisions of the Uniform Principal and Income Act (Revised 1962 Act) as promulgated by the National Conference of Commissioners on Uniform State Laws and to apportion and allocate receipts and disbursements between these accounts; to retain indefinitely, within their sole discretion, any of the property received as part of the trust estate, although except for this express authority it might be of

a kind or in an amount which would be considered improper for a trust; to hold any securities or property in bearer form or in the names of the Trustees or of any person, firm or corporation without indication of any trust; when required to divide or distribute all or any part of the trust estate, to do so in kind or in money, or partly in kind and partly in money, in their sole discretion, their decision as to values and method of division and distribution to be binding on all persons; to give revocable or irrevocable general or specific proxies or authorizations for voting or acting with respect to securities, whether with or without power of substitution and whether discretionary or not, including such authority to any protective or reorganization committee as they shall deem advisable; and generally to exercise the same control over and rights respecting the trust estate as the Settlor could exercise personally. No one dealing with the Trustees shall be bound to inquire into the propriety of the Trustees' action or to see to the application of any money paid to the Trustees.

      6. In determining the net income to be paid to the beneficiaries hereunder, no deduction will be made against the income for depreciation or depletion. The Trustees may, however, from time to time establish a nominal contingency reserve fund and withhold such portions of the net income each year as within their sole discretion they deem necessary or advisable to provide for payment of expenses incurred or to be incurred relating to the tangible

assets of the trust estate, said reserve fund in each year, however, not to be in excess of ten per cent (10%) of said annual net income.

7. It is the desire of the Settlor that any real property conveyed and transferred by the Settlor to the Trustees be retained as an asset of the trust estate and that it not be sold or conveyed unless there would result, in the opinion of the Trustees, a financial loss or detriment to the estate by such retention. The Trustees shall be released and discharged of and from all liability and responsibility for any loss or damage resulting from the retention of said real property. The foregoing powers regarding the investment of the assets of the trust estate should not be needed or invoked by the Trustees unless such real property is sold and conveyed or additional property is conveyed, transferred or assigned to the Trustees.

8. The Trustees shall not be required to give any bond or to file any accounts in any court. From and after the death of the Settlor or his resignation as a Trustee in case he should resign, the Trustees shall annually deliver an account to each adult income beneficiary and to the guardian of each minor income beneficiary.

9. The interests of beneficiaries in principal or income shall not be subject to claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered.

10. The Settlor or EDNA Y. CONROY, or any other person with the consent of WINIFRED ANN STARK, may at any

time or from time to time grant, bargain, sell, convey, assign, transfer, set over, or by will devise and bequeath, additional property, real, personal, or mixed, to the Trustees hereunder, and in such case such property shall become and be part of the trust estate hereunder to the same effect as if referred to in the granting clause hereof; PROVIDED, HOWEVER, that no income of the trust estate shall be used for the purpose of acquiring additional property from the Settlor nor shall said income be used to pay any encumbrances on any additional property received by the Trustees from the Settlor.

11. All checks, drafts, deeds, mortgages, agreements, stock certificates and all other instruments shall be signed by any two (2) of the Trustees; PROVIDED, HOWEVER, that until FIRST HAWAIIAN BANK serves as Trustee only the signature of WINIFRED ANN STARK shall be required in respect to checking or savings and loan accounts or any other accounts with any bank or other financial institution and the cashing of checks or withdrawal of funds; PROVIDED, FURTHER, that upon the FIRST HAWAIIAN BANK becoming sole Trustee as herein provided, such Trustee's signature only shall be required. All checking, savings, savings and loan accounts with any bank or other financial institution shall be carried in the names of the Trustees.

12. The Settlor hereby agrees and declares that the trust estate hereby created is irrevocable and that he has no power or authority to change, alter, amend, revoke or terminate the trust hereby created during his lifetime or by will.

13. Whenever the Trustees shall be required or authorized hereunder to make any payment to a minor prior to the termination of this trust, such payment may be made in their discretion to a parent or guardian of said minor or to said minor or to third parties for the benefit of said minor, on their respective receipts.

14. Upon the death of any beneficiary hereunder other than WINIFRED ANN STARK, the interests and estate of such beneficiary in all income of the trust estate then undistributed shall terminate regardless of when the same shall have accrued, and all such income shall be paid and distributed as though it had accrued immediately after the death of such beneficiary.

15. The terms "issue" and "children" wherever used herein shall include adopted children and their issue.

16. Upon the death of HAROLD W. CONROY or in the event of his resignation or incapacity to serve as Trustee, then EDNA Y. CONROY and HILDA Y. FUJINAMI shall become Successor Trustees. In the further event of the death of EDNA Y. CONROY, or if she shall not survive HAROLD W. CONROY, then HILDA Y. FUJINAMI shall be the Co-Trustee with WINIFRED ANN STARK. In the event HILDA Y. FUJINAMI is unwilling or unable to act as such Successor Trustee, or if she shall act then upon her resignation, death or incapacity to act as such Trustee, the FIRST HAWAIIAN BANK shall become Successor Trustee, to serve together with WINIFRED ANN STARK.

Upon the death of WINIFRED ANN STARK, or in the event of her resignation or incapacity to serve as Trustee, FIRST HAWAIIAN BANK shall become Successor Trustee. The

corporate Trustee shall serve as Co-Trustee with the above named individuals in the order and succession above stated. Upon the death, resignation or incapacity to act of all the remaining individual Trustee, FIRST HAWAIIAN BANK shall become and serve as sole Trustee.

The corporate Trustee shall receive compensation which shall be comparable to charges for similar services made from time to time by corporate trustees in the geographic area in which the trust has its principal situs of administration. The corporate Trustee shall also be entitled to reimbursement for expenses necessarily incurred in the administration of the trust estate. The individual Trustees shall receive such compensation as shall be reasonable for their services, provided, that during the period HILDA Y. FUJINAMI is serving without a corporate trustee as Co-Trustee, she shall receive compensation the same as a corporate trustee. In addition, WINIFRED ANN STARK shall receive reasonable annual traveling expenses between Honolulu, Hawaii, and the continental United States as an expense of the trust estate.

17. If there are assets in the trust estate other than real property having a value in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), WINIFRED ANN STARK shall have the right to designate a trust company located in a state other than the State of Hawaii to serve in place of FIRST HAWAIIAN BANK, such Trustee so designated to be approved by FIRST HAWAIIAN BANK. If FIRST HAWAIIAN BANK fails to act in approving such successor corporate Trustee, then the approval of such Trustee shall be made by the three (3) then senior partners of the law firm of CONROY, HAMILTON,

GIBSON, NICKELSEN & RUSH, or such successor law firm as shall then exist, and failing such approval, by PEAT, MARWICK, MITCHELL & CO.  WINIRED ANN STARK shall have the power to substitute a Trustee for such successor Trustee with the approval of the same parties above designated in the same order indicated.  If it is required to hold title to real property included in the trust estate that a Trustee continue to serve in the State of Hawaii, then FIRST HAWAIIAN BANK shall remain as such Trustee and the Trustee on the mainland of the United States shall be the principal Trustee of the trust estate.

The undersigned Trustees hereby accept the within and foregoing trust and do hereby covenant and agree with the Settlor that they will faithfully discharge the same to the best of their ability.

IN WITNESS WHEREOF, the Settlor and the Trustees have executed these presents the day and year first above written.

_____
Harold W. Conroy                Settlor

_____
Harold W. Conroy

_____
Winifred Ann Stark
                                Trustees

-11-

CITY AND COUNTY OF HONOLULU )
                                        ) SS.
STATE OF HAWAII                 )

        On this 27th day of February, 1974, before me personally appeared HAROLD W. CONROY, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he executed the same as his free act and deed.

                                        _____
                                        Notary Public, First Judicial
                                        Circuit, State of Hawaii.

                                        My commission expires 9-11-76


CITY OF Westfield    )
                           )
COUNTY OF Union     ) SS.
                           )
STATE OF NEW JERSEY )

        On this 25th day of February, 1974, before me personally appeared WINIFRED ANN STARK, to me known to be the person described in and who executed the foregoing instrument and acknowledged that she executed the same as her free act and deed.

                                        _____
                                        Notary Public in and for the
                                        County of Union,
                                        State of New Jersey.

                                        NOTARY PUBLIC OF NEW JERSEY
        My commission expires My Commission Expires February 1, 1976

## EXHIBIT "A"

All of that certain parcel of land situate at Hanakaoo, Lahaina, Island and County of Maui, State of Hawaii, described as follows:

LOTS 13 and 14, area 40,330 square feet, more or less, as delineated on the map entitled WILI KO SUBDIVISION, which said map was filed in the Bureau of Conveyances of the State of Hawaii on March 30, 1970, as File Plan No. 1144.

TOGETHER WITH an easement of right of way, to be used in common with others thereto entitled, over Roadway Lots 21 and 22, as shown on said File Plan; PROVIDED, HOWEVER, that if and when said lots, or any of them, shall be conveyed to and accepted by any governmental authority for use as public highways and parks, said easement, as to the lot or lots so conveyed and accepted, shall immediately terminate.

SUBJECT, HOWEVER, to the following:

1. Reservation in favor of the State of Hawaii of all mineral and metallic mines as reserved in Royal Patent No. 1871.

2. Limitation of abutters' rights of vehicle access as conveyed to the State of Hawaii by Deed dated February 12, 1957, recorded as aforesaid in Liber 3231, Page 411.

3. The reservation and exception in favor of Pioneer Mill Company, Limited, its successors and assigns, creating the perpetual right and easement over and upon the granted premises to discharge, emit, diffuse and inflict noise, vibration, smoke, soot, dust, lights, noxious vapors, odors and other minor nuisances of every description created by and resulting from (1) the operations of Pioneer Mill Company, Limited, in burning sugar cane and bagasse, milling, generating power, trucking, hauling and all other activities incidental to the operation of a sugar plantation, and (2) the operations of Pioneer Mill Company, Limited, its lessees and licensees in constructing, operating and maintaining a railroad, a portion of which may be located adjacent to or near the granted premises, as reserved in that certain Deed dated November 6, 1969, recorded as aforesaid in Liber 6780, Page 285.

4. The restrictive covenants as contained in that certain Deed dated January 26, 1971, recorded as aforesaid in Liber 7411, Page 146.