EXHIBIT "B"

EXHIBIT "B"

THIS INDENTURE OF LEASE made this ____22nd____ day
of ____March____, 1974, by and between HAROLD W. CONROY
and WINIFRED ANN STARK, Trustees under that certain inden-
ture of trust dated ____February 25____, 1974, (HAROLD
W. CONROY TRUST "C") executed by HAROLD W. CONROY as Settlor
in which WINIFRED ANN STARK is named as beneficiary, herein-
after called the "Lessors", and TRANS-PACIFIC CORPORATION, a
Hawaii corporation, the principal place of business and post
office address of which is Suite 203, 733 Middle Street,
Honolulu, Hawaii, hereinafter called the "Lessee",

W I T N E S S E T H :

That for the term, at the rental and upon the
conditions, covenants and agreements hereinafter expressed
and subject thereto, the Lessors do hereby demise and let
unto the Lessee, and the Lessee does hereby lease and hire
from the Lessors:

All of those certain parcels of land situate
at Hanakaoo, Lahaina, Island and County of Maui,
State of Hawaii, described as follows:

LOTS 13 and 14, area 40,330 square feet,
more or less, as delineated on the map entitled
WILI KO SUBDIVISION, which said map was filed
in the Bureau of Conveyances of the State of
Hawaii on March 30, 1970, as File Plan No. 1144.

EXHIBIT "B"

TOGETHER WITH an easement of right of way, to be used in common with others thereto entitled, over Roadway Lots 21 and 22, as shown on said File Plan; PROVIDED, HOWEVER, that if and when said lots, or either of them, shall be conveyed to and accepted by any governmental authority for use as public highways and parks, said easement, as to the lot or lots so conveyed and accepted, shall immediately terminate.

SUBJECT, HOWEVER, to the following:

1.   Reservation in favor of the State of Hawaii of all mineral and metallic mines as reserved in Royal Patent No. 1871.

2.   Limitation of abutters' rights of vehicle access as conveyed to the State of Hawaii by Deed dated February 12, 1957, recorded in the Bureau of Conveyances of the State of Hawaii in Liber 3231, Page 411.

3.   The reservation and exception in favor of Pioneer Mill Company, Limited, its successors and assigns, creating the perpetual right and easement over and upon the granted premises to discharge, emit, diffuse and inflict noise, vibration, smoke, soot, dust, lights, noxious vapors, odors and other minor nuisances of every description created by and resulting from (1) the operations of Pioneer Mill Company, Limited, in burning sugar cane and bagasse, milling, generating power, trucking, hauling and all other activities incidental to the operation of a sugar plantation, and (2) the operations of Pioneer Mill Company, Limited, its lessees and licensees in constructing, operating and maintaining a railroad, a portion of which may be located adjacent to or near the granted premises, as reserved in that certain Deed dated November 6, 1969, recorded as aforesaid in liber 6780, Page 285.

4.   The restrictive covenants as contained in that certain Deed dated January 26, 1971, recorded as aforesaid in Liber 7411, Page 146.

TO HAVE AND TO HOLD the same, together with all buildings, improvements, tenements, rights, easements, privileges and appurtenances thereon or thereunto belonging or appertaining or held and enjoyed therewith, subject to the covenants and conditions hereinafter contained,

unto the Lessee for a term of fifty-five (55) years from
March 1, 1974, to and including February 28, 2029, unless
said term shall be sooner terminated as hereinafter provided,
the Lessee yielding and paying therefor unto the Lessors
rental as follows:

        1.  For the two (2) year period from March 1, 1974,
to and including February 29, 1976, an annual rental of
ELEVEN THOUSAND TWO HUNDRED NINETY-TWO AND 40/100 DOLLARS
($11,292.40), payable in twelve (12) equal monthly install-
ments of NINE HUNDRED FORTY-ONE AND 03/100 DOLLARS ($941.03)
in advance on the first day of each month of each such year.

        2.  For the three (3) year period from March 1,
1976, to and including February 28, 1979, an annual rental,
payable in twelve (12) equal monthly installments in advance
on the first day of each month of each such year, to be
determined as hereinafter provided, said annual rental,
however, to be no greater than SIXTEEN THOUSAND NINE HUNDRED
THIRTY-EIGHT AND 60/100 DOLLARS ($16,938.60) and no less than
FOURTEEN THOUSAND ONE HUNDRED FIFTEEN AND 50/100 DOLLARS
($14,115.50).

        3.  For the five (5) year period from March 1,
1979, to and including February 29, 1984, an annual rental,
payable in twelve (12) equal monthly installments in advance
on the first day of each month of each such year, to be
determined as hereinafter provided, said annual rental,
however, to be no greater than TWENTY-FIVE THOUSAND FOUR
HUNDRED SEVEN AND 90/100 DOLLARS ($25,407.90) and no less
than the rental payable for the next preceding 3-year period
as above provided.

-3-

4. For the five (5) year period from March 1, 1984, to and including February 28, 1989, an annual rental, payable in twelve (12) equal monthly installments in advance on the first day of each month of each such year, to be determined as hereinafter provided, said annual rental, however, to be no greater than ~~THIRTY-THREE THOUSAND EIGHT~~ ~~HUNDRED SEVENTY-SEVEN AND 20/100 DOLLARS~~ *$ 28,251.00* ($33,877.20) and no less than the rental payable for the next preceding 5-year period as above provided.

5. For each ten (10) year period thereafter to the end of the term hereof the annual rental to be determined as hereinafter provided, the annual rental for the first of said 10-year periods to be no less than the annual rental for the 5-year period commencing March 1, 1984, and the rental for each successive 10-year period to be no less than the rental which shall be paid under the foregoing provisions for the next preceding 10-year period, said rent to be paid in twelve (12) equal monthly installments in advance on the first day of each month of each such year.

PROVIDED, HOWEVER, that to preserve working capital of the Lessee and for the facilitating of the financing of improvements to be constructed by the Lessee on the demised premises, as hereinafter provided, and for other purposes of the Lessee, the payment of one-half (1/2) of the annual lease rental to be paid to the Lessors for the period from March 1, 1974, to and including February 29, 1976, shall be deferred and shall be paid together with interest thereon at the rate of six per cent (6%) per annum compounded annually, in monthly installments over the period of the lease from

-4-

March 1, 1976, to and including February 1, 1986, it being
understood and agreed that said monthly installment payments
including said interest shall be the sum of ONE HUNDRED
THIRTY-FOUR AND 06/100 DOLLARS ($134.06) said monthly in-
stallments to be paid to the Lessors together with the
installments of rental payable monthly in advance during
said 10-year period, any default in payment of said deferred
installments of rental and the interest thereon being a
breach of the covenants of this lease, the same as a default
in payment of said monthly rental payments during said period.
The monthly payments to be paid currently over said 2-year
period commencing March 1, 1974, shall be FOUR HUNDRED SEVENTY
AND 51/100 DOLLARS ($470.51).

In addition, the Lessee shall pay as additional
rent to the Lessors the excise or gross income tax or other
similar tax chargeable to and payable by the Lessors under
the laws of the State of Hawaii, or to any other govern-
mental body, in respect to the rent, taxes and other pay-
ments received by the Lessors from the Lessee.

All such rental shall be paid net above taxes,
deductions, assessments and charges.

THE LESSORS HEREBY COVENANT WITH THE LESSEE that
upon payment by the Lessee of the rent as aforesaid and
upon the observance and performance of all of the terms,
covenants, conditions and agreements herein contained and
on the part of the Lessee to be observed or performed, the
Lessee shall peaceably hold and enjoy the demised premises
during the term hereof without hindrance or interruption by
the Lessors or anyone lawfully or equitably claiming by,

-5-

through or under them.

THE LESSEE, IN CONSIDERATION OF THE PREMISES, HEREBY COVENANTS AND AGREES WITH THE LESSORS AS FOLLOWS:

1.  That it will pay the said rent to the Lessors at the place designated by them from time to time, in legal tender of the United States of America as hereinabove provided, without any deduction and without any notice or demand.

2.  The Lessee will pay when due, all taxes, rates, assessments, impositions, duties, charges and other outgoings of every kind and nature whatsoever, which shall, during the term of this lease, be lawfully charged, assessed, imposed, become a lien upon or grow due and payable upon or on account of each and every part and parcel of the land hereby demised and the improvements, both now and hereafter built thereon, whether payable or dischargeable by law by either the Lessors or the Lessee, including all assessments and charges for any permanent benefit or improvement of the premises hereby demised or any part thereof, made under any betterment law or otherwise, and all assessments, and charges for sewerage or street improvement or municipal or other charges which may be legally imposed upon said premises or any part thereof or to which said premises or any part thereof or the Lessors or the Lessee in respect thereof are now or may during said term become liable; PROVIDED, HOWEVER, that where such taxes, rates, assessments, impositions, duties, charges or other outgoings may be paid in installments, the Lessee shall pay only those installments, together with interest on unpaid balances, in respect of periods which fall wholly within the term of this lease and a proportionate part of any

installment in respect of a period only a portion of which falls within the term of this lease.

It is understood and agreed that the Lessee shall have the right, at its cost and expense, either in the name of the Lessors or the Lessee, to protest any such taxes, rates, assessments, impositions, duties, charges and other outgoings and to appeal or litigate the question thereof.

3. That it will, at its own expense, at all times during the said term, well and substantially repair, maintain, amend and keep all buildings and improvements hereafter built on the land hereby demised with all reasonable reparations and amendments whatsoever; and will keep the demised premises and all improvements thereon in a strictly clean and sanitary condition; and will observe, perform and comply with all laws, ordinances, rules and regulations of the health or other governmental authorities applicable to said demised premises; and will allow the Lessors and their agents free access to the demised premises at all reasonable times for the purpose of examining the same and determining whether the covenants herein are being fully observed and performed, and will make good at its own cost and expense all repairs and amendments reasonably necessary of which notice shall be given within thirty (30) days after the giving of such notice; and will pay for all repairs and any alterations and additions to the improvements now or hereafter located upon said demised premises and shall protect and hold harmless the Lessors and the demised premises from any and all liens of any kind or character which may be levied for labor performed or

-7-

materials furnished in connection with the erection,
maintenance, repair or alterations of any improvements
now existing of hereafter placed upon said demised premises,
and will indemnify the Lessors against all actions, suits,
damages and claims by whomsoever brought or made by reason
of the non-observance or non-performance of the said laws,
ordinances, rules and regulations, or of this covenant.

4.  That it will, at its own expense, during the
whole of said term, make, build, maintain and repair all
sewers, drains and sidewalks which may be required by law
to be made, built, maintained and repaired upon, adjoining
or in connection with, or for the use of said demised
premises or any part thereof.

5.  That the Lessee will not, without the consent
of the Lessors first obtained in writing, assign or mortgage
this lease or sublease or part with the possession of the
whole or any portion of the premises herein demised, except
as hereinafter stated; PROVIDED, HOWEVER, that (a) the
Lessors shall not unreasonably withhold such consent, and
(b) the Lessee shall not be required to pay any sum of
money to the Lessors for such consent except a reasonable
charge for processing the same.

6.  That it will hold the Lessors harmless from
any claim or demand by third persons for loss or damage,
including claims for property damage, personal injury or
wrongful death, arising out of any accident on the demised
premises, including the sidewalks, if any, in front of or
around the same; or occasioned by any nuisance made or
suffered on the premises, or by any fire thereon, or growing

-8-

Case 1:25-cv-00207-MWJS-RT     Document 1-3     Filed 05/20/25     Page 10 of 25
PageID.38

out of or caused by any failure on the part of the Lessee
to maintain the premises in a safe condition, and will
reimburse the Lessors for any attorneys' fees or other
costs in connection with the defense of any such claim.

      7.   That it will not suffer or make any waste
or strip or unlawful or improper or offensive use of said
demised premises or any part thereof.

      8.   That the Lessee will at its own expense at
all times during said term keep all buildings and improve-
ments now or hereafter erected on the demised land insured
against loss or damage by fire with extended coverage in a
responsible insurance company authorized to do business in
Hawaii, in an amount as near as practicable to the replace-
ment cost thereof, in the joint names of the Lessors and
Lessee, payable in case of loss to the Lessors and Lessee
as their interests may appear, and will pay all premiums
thereon when due and from time to time on request therefor
deposit with Lessors a true copy or certificate of such
current insurance policy, and any money derived therefrom
in case of loss shall be used as soon as reasonably possible
by the Lessee for rebuilding, repairing or otherwise re-
instating the same buildings in a good and substantial
manner according to the plan and elevation of the buildings
so destroyed or damaged or such modified plan as shall be
approved by the Lessors, and in case said moneys received
shall be insufficient in amount for such construction, the
Lessee shall make up the deficiency out of its own funds;
PROVIDED, HOWEVER, that if any or all of the buildings and
improvements on said premises shall be damaged or destroyed

-9-

at any time during the last ten (10) years of the term
hereof and if the insurance proceeds are insufficient to
restore the building or buildings, or if the rebuilding,
reinstating, replacing or repairing of said buildings and
improvements in accordance with the original plans and
specifications or the new plans and specifications speci-
fied by the Lessors are not permissible under the laws
and regulations then in effect, then the Lessee may, at
its option, rebuild, reinstate, or replace said buildings
either in accordance with the original plans and specifi-
cations, if permissible, or according to new plans and
specifications approved by the Lessors and which are in
compliance with the then existing laws and regulations,
using said insurance proceeds therefor and making up the
deficiency from its own funds or may terminate this lease
by notice in writing given the Lessors, and in the event
the Lessee exercises its option to have the lease terminated,
then all of the insurance proceeds payable for the damage
or destruction shall be retained by and belong to the
Lessors and the Lessee shall be released and relieved of
all further obligations hereunder; PROVIDED, FURTHER, that
if the Lessee desires to terminate this lease, then the
Lessors may elect to rebuild, reinstate or replace the
buildings and improvements either in accordance with the
original plans and specifications or in accordance with
plans and specifications which conform to the then existing
laws and regulations, and if the Lessors so elect, then the
Lessee's option to terminate this lease shall not become
effective and this lease shall remain in force and effect

for its full term, subject, however, to the further appli-
cation of the provisions hereof as to further damage or
destruction, and the Lessee shall pay in addition to the
rental reserved in this lease an additional annual rental
for the remainder of the term, commencing as of the date
when said rebuilt, replaced or reinstated buildings or
improvements shall be ready for occupancy a sum equal to
the then prevailing interest rate paid on conventional
real estate mortgage loans or seven per cent (7%) per
annum, whichever is the larger, on the amount expended
by the Lessors from their own funds over and above the
amount of insurance proceeds, which additional annual
rental shall be paid in twelve (12) equal monthly install-
ments in addition to and together with the rental reserved.

9.  That all goods, wares, merchandise or other
property or effects of the Lessee and of any sublessees or
subtenants of the Lessee or any other person which may be
brought into or upon the demised premises shall remain
thereon without liability upon the Lessors for injury or
damage thereto, and the Lessors shall not be held liable
or responsible for any damage thereto by any cause, and
the Lessee shall indemnify and hold the Lessors harmless
with respect to any such loss or damage or claim therefor.

10.  That it will procure at its own cost and
expense and keep in force during the entire period of
this lease a policy or policies of comprehensive general
liability insurance in a company or companies approved
by the Lessors with minimum limits of not less than
$50,000.00 for injury to property and $300,000.00 to

-11-

$500,000.00 for injury to persons, or a $500,000.00 single
limit policy, and said policy or policies to cover the
entire demised premises and the sidewalks upon which the
premises abut; said policy or policies shall name the
Lessors as additional assureds, and said policy or policies
or a certificate showing said policy or policies to be in
force shall be deposited with the Lessors together with
receipted premiums therefor, and said policies shall con-
tain a thirty (30) day notice of cancellation clause to be
given the Lessors.

11. That it will during the term hereof pay all
charges for utility services upon the demised premises, in-
cluding sewer rates, garbage collection and other charges.

12. That on the expiration of the term hereby
demised, or sooner determination thereof as in this lease
provided, it will peaceably and quietly leave and surrender
and deliver up to the Lessors possession of the demised
premises together with all improvements thereon in good
repair, order and condition, reasonable wear and tear
excepted, it being understood and agreed that if the
Lessee shall at that time be in good standing without
any then existing default or violation of any previous
covenant or condition in this lease contained but not
otherwise, the Lessee may then remove from said premises
all trade fixtures placed by it on said premises on the
express condition that the Lessee replace and repair all
damage to said premises caused by or resulting from the
removal of such fixtures.

13. That prior to the construction of any

-12-

building or other improvements on the demised premises,
the Lessee shall submit to the Lessors the plans and speci-
fications for such building or other improvements, including
a plot plan showing the location of said building, and such
plans and specifications shall be approved by the Lessors
prior to the commencement of such building or other improve-
ments; that in case the Lessors shall, within sixty (60) days
after receipt of said plans and specifications from the Lessee,
fail either to approve said plans and specifications or to
disapprove of the same in writing, with the reasons given
therefor, such plans and specifications shall be deemed
approved; that in case the Lessors shall disapprove said
plans and specifications and any dispute shall arise result-
ing from such disapproval, the disputed question or questions
shall be submitted to a licensed architect to be agreed upon
by the Lessors and the Lessee, and failing agreement as to
the designation of such architect, the Lessors shall employ
a licensed architect and the Lessee shall employ a licensed
architect, and the two licensed architects so employed shall
select a third licensed architect, and said single architect
or a majority of said three architects, as the case may be,
shall resolve any such dispute or disputes, the Lessors and
the Lessee to each pay their or its own cost and expenses,
including the fee of the architect selected by them or it
and one-half of the cost of the third architect or the single
architect, as the case may be.  The decision of a majority of
the three architects or the single architect, as the case may
be, shall be final and binding upon the parties hereto.  The
Lessee shall, prior to commencement of such construction,

-13-

furnish to the Lessors satisfactory proof of Lessee's ability
to pay the cost of such construction, and shall also deposit
with the Lessors a surety bond with the contractor performing
such work named as principal and with a corporate surety
licensed as such in the State of Hawaii named as surety,
in form and amount satisfactory to the Lessors, providing
for and insuring the full and faithful performance of the
contract for such construction including the payment of
all subcontractors, labormen and materialmen, the Lessors
to be named as obligees in said bond.

That in respect to the construction of any addi-
tional building or buildings or other improvements, after
the construction of the aforementioned building or buildings,
or the alteration of any building or other improvements or
construction of any addition to any building or other improve-
ment costing FIVE THOUSAND DOLLARS ($5,000.00) or more, the
foregoing provisions regarding the submission and approval
of the plans therefor, the settlement of any dispute in
regard thereto, the providing of the Lessors with a perform-
ance and payment bond, and the furnishing to the Lessors of
evidence of the Lessee's ability to pay for such construction
shall apply, the same as is provided for regarding said
initial construction.

The Lessee may at Lessee's expense cause to be
consolidated the demised premises for planning and building
purposes, and the Lessors will upon request of the Lessee
take such reasonable steps as shall be requested by the
Lessee to effect such consolidation.

AND IT IS MUTUALLY COVENANTED AND AGREED BY AND

-14-

BETWEEN THE LESSORS AND THE LESSEE, JOINTLY AND SEVERALLY,
AS FOLLOWS:

(a)  That in case the Lessors shall, without any
fault on their part, be made a party to any litigation com-
menced by or against said Lessee concerning the demised
premises (other than condemnation proceedings), the Lessee
shall and will pay all costs and reasonable attorneys' fees
incurred by or imposed upon the Lessors by or in connection
with such litigation, and the Lessee will also pay all costs
and reasonable attorneys' fees which may be incurred or paid
by the Lessors in recovering possession of the demised
premises and in enforcing the covenants and agreements of
this lease, including costs of collection of delinquent
rentals, and other charges.

(b)  That in the event the whole or any portion
of the premises hereby demised shall be taken or condemned
by any duly constituted authority, the Lessee will peaceably
surrender and deliver up to the Lessors possession of the
premises so taken or condemned; that all compensation and
damages payable on account of such taking or condemnation
which shall represent the value of the land and improve-
ments so taken or condemned, shall be payable to and be
the sole property of the Lessors; provided, however, that
out of any compensation and damages which shall represent
the value of the buildings and other improvements constructed
on the demised premises by the Lessee the Lessors shall pay
to the Lessee that proportion of such award paid in respect
to such building or buildings and other improvements taken
that the unexpired term of this lease at the time of

-15-

condemnation bears to the period dating from the time of completion of said improvements for which such award is made to the end of the 55-year term of this lease.

(c)  In case the whole of the land hereby demised shall be taken by condemnation by any duly constituted authority and thereby pass out of the control of the Lessors and the Lessee shall by reason thereof lose the right to possession of said land as Lessee hereunder, then upon such taking this lease shall terminate.

In case any portion of the demised premises shall be taken, then and in every such event the annual rental theretofore payable hereunder shall be reduced for the remainder of the rental periods for which the rental is established under the provisions hereof in the proportion which the area of the land taken bears to the total area of the demised premises.

In the event the taking of a portion of the land included in the demised premises shall render the remainder thereof unsuitable for Lessee's use, then this lease shall be terminated, PROVIDED the Lessee shall have given the Lessors written notice that the remainder of said land will not be suitable for its use in sufficient time to enable the Lessors to present to or against the condemning authority their claim for compensation or damages consequent upon such termination of this lease.

Any condemnation of a leasehold interest only shall not release the Lessee from the payment of rent under this lease, but in such event the Lessee may claim and retain all compensation and damages resulting from

such condemnation of a leasehold interest; out of any
compensation and damages so awarded, the Lessee shall
pay to the Lessors that proportion of such award, if any,
representing compensation for damages to the reversionary
interest of the Lessors.

(d)  The annual rental to be paid during the
3-year period from March 1, 1976, to February 28, 1979,
the 5-year period from March 1, 1979, to February 29, 1984,
the additional 5-year period from March 1, 1984, to February
28, 1989, and during each 10-year period of this lease com-
mencing March 1, 1989, to the end of the term hereof, shall
be determined by mutual agreement between the Lessors and
the Lessee, or in the event of failure to agree on the annual
rental to be paid for each of said periods prior to ninety
(90) days from expiration of the rental period next preceding,
then the annual rental shall be determined based on the then
market value of all of the land included in the demised
premises, the value of the land to be based on its being
improved to the highest and best use and as enhanced by street
improvements and contributing benefits and betterments, and
as if unencumbered and vacant of all buildings, available and
ready for development to the highest and best use, multiplied
by the then prevailing rate of return on land of similar type
and location, but in no event less than seven per cent (7%),
the resulting figure to be the annual rental, but in no event
shall the rental for the 3-year period from March 1, 1976,
to February 28, 1979, be less than $14,115.50 nor more than
$16,938.60, in no event shall the rental for the 5-year
period from March 1, 1979, to February 29, 1984, be less than

-17-

the rental payable for the preceding 3-year period nor more
than $25,407.90, in no event shall the rental for the 5-year
period from March 1, 1984, to February 28, 1989, be less than
the rental payable for the preceding 5-year period nor more
than $33,877.20, and the rental for each 10-year period
thereafter shall be no less than the amount of rental payable
for the rental period next preceding.  The deferred rental
together with interest thereon compounded shall be paid in
monthly installments commencing March 1, 1976, as aforesaid.

In the event of failure to agree on a fair rental
for each of the periods as aforesaid ninety (90) days prior
to the commencement of each rental period, the said annual
rental shall be determined by three (3) appraisers in the
manner provided for by Chapter 658, Hawaii Revised Statutes,
as the same may be amended, in which case either party may
give to the other written notice of the appointment of an
appraiser whereupon the other party shall, within ten (10)
days after receipt of such notice, name a second appraiser
and in case of failure so to do, the party who has already
named an appraiser may have the second appraiser selected
or appointed by one of the judges of the First Circuit
Court, State of Hawaii, and the two appraisers so appointed
in either manner shall select and appoint a third appraiser,
and in the event the two appraisers so appointed shall fail
to appoint the third appraiser within ten (10) days after
the naming of the second appraiser, either party may have
the third appraiser selected or appointed by one of said
judges, and the three appraisers so appointed shall there-
upon proceed to determine the annual rental based on the

-18-

then market value of the said land as aforesaid and the decision and award of any two of them shall be final, conclusive and binding upon all parties unless the same shall be vacated, modified or corrected, all as provided in said Chapter 658, Hawaii Revised Statutes, as the same may be amended. The appraisers, all of whom shall be residents of Hawaii and members of The American Institute of Real Estate Appraisers or its successor or other similar society, shall have all the powers and duties prescribed by said Chapter 658 and judgment may be entered upon any such decision and award in said Circuit Court, as provided in said Chapter.

If and whenever the fixing of such rental is under arbitration, the Lessee, pending the determination thereof, shall continue to pay the same rental which it had been paying during the last preceding rental period and shall promptly pay the deficiency, if any, upon the conclusion of the arbitration proceedings. In all cases of arbitration the Lessors and the Lessee shall each pay the expense of their or its own attorneys' and witnesses' fees. All other expenses of arbitration shall be divided equally between the Lessors and the Lessee.

PROVIDED, HOWEVER, and this lease is upon the continuing condition that if the Lessee shall fail to pay said rent or any part thereof within fifteen (15) days after the same shall become due, or shall fail to pay the deferred rental at the times and in the amounts provided to be paid as aforesaid, whether the same shall or shall not have been legally demanded, or fails in any other

respect faithfully to observe or perform any condition
or covenant of this lease contained and on its part to be
observed or performed, and such default shall continue
for a period of thirty (30) days after written notice to
the Lessee, or if the Lessee shall be declared bankrupt
or becomes insolvent or makes an assignment for the benefit
of its creditors, or if the Lessee shall file any debtor
proceedings, or takes or has taken against it any proceed-
ings of any kind or character whatsoever under any provi-
sions of the Federal Bankruptcy Act seeking any readjustment,
arrangement, postponement, composition or reduction of the
Lessee's debts, liabilities or obligations, or abandons
said premises, or suffers this lease or any estate or in-
terest hereunder to be taken under any writ of execution,
then and in any such event the Lessors may at once enter
into and upon the demised premises or any part thereof in
the name of the whole and at their option may cancel this
lease by recording in the Bureau of Conveyances at Honolulu
an affidavit that default has occurred and that this lease
has been cancelled and, if the land comes under the operation
of the Land Court, may cancel this lease by mailing a written
notice to the Lessee, addressed to the last known address
of the Lessee, and filing a copy of such notice in the
Office of the Assistant Registrar of the Land Court of the
State of Hawaii, or at the option of the Lessors, by filing
a petition for an order cancelling this lease, which order
may be issued by the Land Court on ex parte petition with-
out summoning or notifying the Lessee, and thereupon take
possession of the said premises and all improvements thereon,

-20-

and thereby become wholly vested with all right, title and
interest of the Lessee therein and may expel and remove
from the said premises the Lessee and those claiming under
it, and their effects, all without service of notice or
resort to any legal process and without being deemed guilty
of any trespass or becoming liable for any loss or damage
which may be occasioned thereby, and without prejudice to
any other remedy or right of action which the Lessors may
have for arrears of rent or for other preceding breach of
covenant of this lease on the part of the Lessee.  It is
understood and agreed that in the event there shall be
default in payment of any installment of the deferred
rental which shall hereafter become due under the foregoing
terms, and such default shall continue for more than fifteen
(15) days, the full amount of the deferred rental then
remaining unpaid shall, at the option and upon the demand
of the Lessors, become immediately due and payable.

AND IT IS HEREBY FURTHER EXPRESSLY AGREED AND
DECLARED that the acceptance of rent by the Lessors or
their agent shall not be deemed to be a waiver by them
of any breach by the Lessee of any covenant herein con-
tained, nor of the Lessors' right of reentry for breach
of covenant; that the waiver by the Lessors of any breach
shall not operate to extinguish the covenant, term or
condition, the breach whereof has been waived, nor be
deemed a waiver of the right to declare a forfeiture for
any breach, but that the same shall remain and continue
in full force and effect, subject to any future breaches,
and likewise, that the summary termination of this lease,

under this provision, shall not operate to deprive the Lessors of any other rights they may have against the Lessee for rents due up to the time of such termination, or for any other debt, loss, damage or injury; that the term "premises" wherever it appears herein includes and shall be deemed or taken to include (except where such meaning would be clearly repugnant to the context) all buildings and improvements now or at any time hereafter built on the land hereby demised; that the term "Lessors" in these presents shall include the Lessors, their respective successors and assigns, and that the term "Lessee" shall be construed to mean and include the Lessee and its successors and permitted assigns.

IN WITNESS WHEREOF, the Lessors and the Lessee have executed these presents the day and year first above written.

_____
Harold W. Conroy

_____
Winifred Ann Stark
Trustees under that certain indenture of trust dated February 25, 1974 (Harold W. Conroy Trust "C") executed by Harold W. Conroy as Settlor in which Winifred Ann Stark is named as beneficiary, Lessors


TRANS-PACIFIC CORPORATION


By _____
    Its  PRESIDENT


By _____
    Its

                              Lessee


- 22 -

CITY AND COUNTY OF HONOLULU )
STATE OF HAWAII                )  SS.

       On this 2*nd* day of *April*, 1974,
before me personally appeared HAROLD W. CONROY, one of the
Trustees under that certain indenture of trust dated
February 25, 1974, (Harold W. Conroy Trust "C")executed by
HAROLD W. CONROY as Settlor in which WINIFRED ANN STARK is
named as beneficiary, to me known to be the person described
in and who executed the foregoing instrument and acknowledged
that he executed the same as his free act and deed as said
Trustee.

                    _____
                    Notary Public, First Judicial
                    Circuit, State of Hawaii.

                    My commission expires 9-11-76

CITY OF WESTFIELD     )
COUNTY OF UNION       )  SS.
STATE OF NEW JERSEY   )

       On this 1*st* day of *over*, 1974,
before me personally appeared WINIFRED ANN STARK, one of
the Trustees under that certain indenture of trust dated
February 25, 1974, (Harold W. Conroy Trust "C") executed
by HAROLD W. CONROY as Settlor in which WINIFRED ANN STARK
is named as beneficiary, to me known to be the person described
in and who executed the foregoing instrument and acknowledged
that she executed the same as her free act and deed as said
Trustee.

                    _____
                    Notary Public in and for the
                    County of Union, State of New Jersey

                    My commission expires March 12, 1979

                            JOANNE G. FILICIELLO
                       NOTARY PUBLIC OF NEW JERSEY
                     My Commission Expires March 12, 1979.

CITY AND COUNTY OF HONOLULU )
STATE OF HAWAII                        ) SS.

On this 22ᴺᴰ day of *MARCH*, 1974, before me
appeared *JAMES A. PATTERSON* and _____,
to me personally known, who, being by me duly sworn, did say
that they are the *PRESIDENT* and _____
respectively, of TRANS-PACIFIC CORPORATION, a Hawaii corpora-
tion, and that the seal affixed to the foregoing instrument
is the corporate seal of said corporation and that said
instrument was signed and sealed in behalf of said corpora-
tion by authority of its Board of Directors, and the said

*PRESIDENT* _____ and _____
acknowledged said instrument to be the free act and deed of
said corporation.

*Jean A. Patterson*

Notary Public, First Judicial
Circuit, State of Hawaii.

My commission expires *4/15/74*

- 24 -